**WILLKIE FARR & GALLAGHER LLP**
NICHOLAS REDDICK (SBN 288779)
  nreddick@willkie.com
R. TILL HACKSTEIN (SBN 350956)
  thackstein@willkie.com
IMAHN DAEENABI (SBN 363932)
  idaeenabi@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: (415) 858-7400

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRISCOLL'S, INC., | Case No. 5:26-cv-05568 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **FALSE ADVERTISING (LANHAM ACT § 43(A))** |
| LOCALIZE LLC dba LOCALIZE – FARMERS MARKET, a Texas limited liability company, ZEPHYR MAX VAN OLPHEN ZOIDIS, an individual, and GRANT STOLL, an individual, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Driscoll's, Inc. ("Plaintiff" or "Driscoll's"), by and through its counsel, files this Complaint and Demand for Jury Trial against Defendants Localize LLC ("Localize"), Zephyr Max van Olphen Zoidis, and Grant Stoll (collectively, the "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from a coordinated and unlawful social media campaign by Defendants—spanning at least 67 posts over 25 days—to spread false and misleading information about Driscoll's to drive consumers away from Driscoll's berries toward Defendants' competing platform, the Localize – Farmers Market app.

2. Driscoll's is the result of more than a century of family-owned berry farming, bringing consumers fresh, healthy berries they find in their grocery stores today. With roughly 6,000 employees, the family-owned and operated berry company headquartered in Watsonville, California has devoted decades to developing the finest strawberries, raspberries, blackberries, and blueberries for American consumers to enjoy. As a result, the Driscoll's label placed on each of its berry containers has become synonymous with quality, taste, and health. The roughly 900 independent growers who engage with Driscoll's to grow Driscoll's proprietary berry varieties are held to rigorous safety and quality standards, and Driscoll's works tirelessly to deliver fresh and healthy berries to consumers while taking care of its employees and aligning with its customers and independent growers. Driscoll's also invests heavily in its communities, donating large sums every year to charities and community organizations, including in Watsonville and the surrounding area where many of its employees live and work.

3. Despite this history and track record, beginning in April 2026, Defendants Zoidis and Stoll launched a coordinated social media campaign designed to poison consumers against Driscoll's berries and drive them to purchase berries through Defendants' newly formed company, Localize. Defendants posted a barrage of content on Instagram, Threads, Facebook, X, and TikTok, leveling inflammatory and baseless accusations about Driscoll's berries—including that they cause cancer in children—and fomenting hatred toward Driscoll's employees, including a receptionist and an employee handing out blankets at a community event.

1
DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568

4.     Defendants did not care that their posts contained false and misleading information. They seized on an opportunity to profit from fomenting fear and hatred toward Driscoll's and its employees by accusing them of causing increased rates of cancer in children—a completely unproven and baseless claim; but one they knew would cause Driscoll's customers to stop buying Driscoll's berries and instead pay Defendants $59.99 per year to purchase berries through their platform, Localize.

5.     Defendants' efforts to mislead consumers have been successful.  Their posts have been seen by hundreds of thousands of consumers.  As Defendants boast, their app has become the "#1 Local Farm Finder App" with over 400,000 users.  And consumer after consumer exclaimed on the posts surprise and disgust upon being told by Defendants that Driscoll's products caused increased rates of cancer in children, vowing to no longer purchase berries from Driscoll's.  One such viewer of Defendants' false and misleading statements exclaimed, "@driscollsberry causes cancer…will not be buying them anymore."  Another wrote, "They poisoned the children and gave them cancer," while another vowed "We won't buy your poison any longer" and "BOYCOTT FRUITS CAUSE CANCER."

6.     Defendants' inflammatory posts also paraded photographs of Driscoll's employees coupled with false accusations to give a face for their viewers to target.  Unsurprisingly, these posts have provoked a barrage of threats against these unsuspecting employees, independent growers, and Driscoll's.  One of Defendants' followers responded to their post that included a photograph of a Driscoll's employee and an independent grower who grows raspberries for Driscoll's: "KILL THE OWNERS."  Others responded: "They will listen to their Fields being sallted [sic] and burned," "Let's tell em. And their kids," and "If they spray pesticide, then we need to spray bullets." Defendants' posts left Driscoll's employees, like the receptionist whose job was to greet those walking into Driscoll's headquarters, afraid that someone would burst through the front doors intent on carrying out their threats.

7.     Defendants were not shy about using these false and incendiary claims for their own profit, even if it caused some families to turn away from eating fresh berries altogether.  Each post was emblazoned with the Localize brand and, after baselessly excoriating Driscoll's and its

2

employees for causing cancer, concluded by encouraging viewers to use their subscription-based platform to purchase berries instead of from Driscoll's.

8.     Defendants also had no shame in using photographs taken without consent from Driscoll's website, including of employees, volunteers, and independent growers who wanted no role in Defendants' campaign to promote and advertise their company.

9.     Defendants cannot claim ignorance of the falsity or impact of their posts.  Driscoll's informed them on May 27, 2026 and again on June 1 and 2, 2026, through counsel, that their content was threatening and harassing employees and spreading false and misleading information for Defendants' own commercial gain.  Yet despite these warnings, Defendants have refused to stop.

10.     Driscoll's constantly strives to improve and innovate, and welcomes good faith discussions about its practices, but it will not stand by while Defendants disseminate false statements that mislead consumers and endanger the safety of its employees.  Driscoll's therefore brings this action under the federal Lanham Act to halt Defendants' ongoing false advertising, protect its employees, remedy the substantial harm to its goodwill, reputation, and business, and recover the damages caused by Defendants' willful misconduct.

## THE PARTIES

11.     Plaintiff Driscoll's, Inc. is a California corporation with its principal place of business in Watsonville, California.  Driscoll's, a family-owned and operated company, traces its roots to berry-growing families whose history in California's Pajaro Valley spans more than a century.  The company has been selling berries under the Driscoll's name since 1953.  In the early twentieth century, members of the families that founded Driscoll's began producing Sweet Briar strawberries in California's Pajaro Valley, where the company remains headquartered today.  In 1958, Driscoll's first patented strawberry variety helped extend the growing season and allowed the fruit to travel longer distances.  Due in no small part to this kind of innovation, Driscoll's today is the largest berry company in the world, supplying approximately one-third of all berries sold in the United States. Driscoll's develops patented berry varieties through natural breeding methods and licenses those varieties to more than 900 independent growers in twenty-one countries.  About eighty-five percent of the revenue Driscoll's earns goes back to its independent growers.  But Driscoll's does more than

3

just market its berries.  The company develops, packages, transports, and sells its premium berries to consumers in nearly fifty countries under the Driscoll's brand, which is widely recognized by consumers for quality, freshness, and flavor.

12.    Defendant Zephyr Max Van Olphen Zoidis is an individual who represents that he works and/or resides in the San Francisco Bay Area.  *See* Ex. A.  Mr. Zoidis is a co-founder, member, and operator of Defendant Localize LLC.  *See* Ex. B.  On information and belief, Mr. Zoidis operates Instagram, Threads, TikTok, X, Facebook, and LinkedIn accounts under his name or the account name @zephzoid through which he personally authored, published, and disseminated certain of the posts described herein, including numerous posts promoting and advertising Localize's app.  Upon information and belief, Mr. Zoidis also operates or directs content for the accounts Localize - Farmers Market (@Localizefood.app) and localize.explained on Instagram and X.

13.    Defendant Grant Stoll is an individual residing, on information and belief, in Ross, California, which is located within the Northern District of California, and he represents that he is attending school in San Luis Obispo, California.  *See* Ex. C.  Defendant Stoll is a co-founder and operator of Defendant Localize.  On information and belief, Mr. Stoll operates Instagram, Threads, TikTok, X, Facebook, and LinkedIn accounts under his name or the account name @grantonsoil, through which he personally authored, published, and disseminated certain of the posts described herein, including numerous posts promoting and advertising Localize's app.  Upon information and belief, Mr. Stoll also operates or directs content for the accounts Localize - Farmers Market (@Localizefood.app) and localize.explained on Instagram and X.

14.    Defendant Localize, which appears to have been founded in or around January 2026, is a limited liability company organized under the laws of the State of Texas, with its registered address at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.  *See* Ex. B.  Localize operates a mobile application called "Localize - Farmers Market" that, per its own advertisement, connects consumers to local farmers, ranchers, and food producers as a direct alternative to large agricultural companies.  Localize claims to be the "#1 Local Farm Finder App" with over 400,000 users, some of whom, on information and belief, are located in the Northern District of California.  Exs. D, E.

4

Localize describes itself as "one of the fastest growing startups of 2026[,]" and advertises and makes its app available to consumers in California. Exs. D, F. As of June 9, 2026, Localize charges its users a regular annual membership fee of $59.99 to access the platform. *See* Ex. G.

15. At all relevant times, Defendants Stoll and Zoidis acted on their own behalf and as agents and operators of Localize, within the course and scope of that agency, and with the authorization, consent, and ratification of Localize. They personally conceived, directed, authorized, and carried out the wrongful acts alleged herein, and are therefore directly liable for those acts notwithstanding the corporate form.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Driscoll's federal claims pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States, the Lanham Act, 15 U.S.C. § 1051 *et seq*.

17. This Court has personal jurisdiction over Defendants Zoidis, Stoll, and Localize because, among other reasons, they (i) purposefully directed their tortious conduct at California and at Driscoll's, a California resident, and its employees who live and work in California; (ii) Defendants Stoll and Zoidis hold themselves out as working and/or residing in California; (iii) Defendants' wrongful posts make false claims about Driscoll's activities in California and include copyrighted and unauthorized photographs of Driscoll's employees and offices in California; and (iv) Defendants, through their wrongful posts, advertise to consumers in California and caused numerous consumers in California to cease purchasing berries from Driscoll's.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because (i) a substantial part of the events giving rise to Driscoll's claims occurred in this District, (ii) a substantial part of the harm to Driscoll's, including loss of customers and injury to its reputation, goodwill, and business relationships, was suffered in this District, where Driscoll's resides and maintains its principal place of business, (iii) Defendant Localize targets consumers in this District with advertisements and promotional content discussing events that occurred in this District and including photographs of Driscoll's employees and offices located in this District, (iv) Defendant Localize maintains business relationships with farmers and ranchers in this District, (v) Defendant

Stoll resides in this District, and (vi) Defendant Zoidis holds himself out to work and/or reside in this District.

## DIVISIONAL ASSIGNMENT

19.    Pursuant to Local Rules 3-5(b) and 3-2(c), this action should be assigned to the San Jose Division because a substantial part of the events giving rise to the claims occurred in Santa Cruz County.

## STATEMENT OF FACTS

**A.    Driscoll's Is a Family-Owned Berry Company with Substantial Goodwill And Deep Roots In Its Community**

20.    Driscoll's is a fourth-generation family business whose founding families have, for more than a century, stayed faithful to one simple promise: delivering premium-quality berries that bring people joy and deserve the confidence consumers place in the Driscoll's name.

21.    Driscoll's has long-established roots in the Watsonville community, and throughout California.  After Joseph Reiter and Richard Driscoll began producing Sweet Briar strawberries in the Pajaro Valley in the early twentieth century, members of the Driscoll and Reiter families founded the predecessor to Driscoll's in the 1940s.  In 1953, Driscoll Strawberry Associates, Inc. began selling premium fresh California strawberries, marking the beginning of a revolution in the fresh berry industry.  Today, Driscoll's berries are sold to consumers throughout the United States and internationally under the Driscoll's brand name.

22.    Driscoll's business model involves developing and then licensing its patented berry varieties to independent growers, who independently cultivate the berries in accordance with Driscoll's food safety and quality standards.  From the beginning, however, Driscoll's has focused on building a full fresh berry system—much more than just marketing its fruit.  The company arranges a full chain of plant development, nursery supply, grower production, quality review, cooling, packing, transportation, marketing, and sale, so that delicate fresh berries can move from fields to stores to tables while preserving freshness and quality.

23.    Driscoll's supplies approximately one-third of all berries sold in the United States and sells berries in close to fifty countries.  Its brand name is widely recognized in the fresh produce

industry. Driscoll's has invested substantially in the communities in which it operates and in building its reputation for quality, food safety, and responsible agricultural practices. That reputation and the associated goodwill are among the company's most valuable assets.

24. Driscoll's directly employs approximately 6,000 people, including many who live and work in or near Watsonville, where Driscoll's is headquartered. Additionally, Driscoll's engages with more than 900 independent growers, ranging from multi-generational farming families to first-time growers and large-scale agricultural enterprises, who receive about eighty-five percent of Driscoll's annual revenue. These independent growers are located in communities in California, the United States, and twenty-one countries across the globe, and allow Driscoll's to deliver on its mission to provide high-quality berries to the American public and international communities.

25. In addition to investing heavily in its employees and collaborations with independent growers, Driscoll's also invests heavily in the communities it serves. For example, since 2005, Driscoll's has supported over 1,200 nonprofits, funded over 1,500 employee-led projects, and awarded twenty-nine million dollars in grants and sponsorships, supporting thousands of local initiatives across thirteen countries on five continents.[1] In all, Driscoll's dedicates four percent of its operating income to charitable giving, nurturing and investing in communities alongside its business.[2]

26. Driscoll's also invests heavily in educating consumers about its products. Through extensive marketing campaigns, packaging design, point-of-sale materials, and consumer outreach efforts, Driscoll's has worked to ensure that when consumers encounter the Driscoll's name and branding in grocery stores and retail outlets, they can purchase with confidence knowing that they are selecting berries that meet the highest standards of quality, taste, and food safety. These efforts have spanned years of consistent messaging and brand investment, resulting in significant consumer recognition and goodwill associated with the Driscoll's brand. As a direct result of these expenditures, consumers return to Driscoll's again and again because the name has come to mean

---

[1] *See One Family, One Earth*, DRISCOLL'S, https://www.driscolls.com/one-family-one-earth (last visited June 9, 2026); *Charitable Giving*, DRISCOLL'S, https://www.driscolls.com/about/charitable-giving (last visited June 9, 2026).
[2] *See Charitable Giving*, DRISCOLL'S, https://www.driscolls.com/about/charitable-giving (last visited June 9, 2026).

freshness, flavor, quality, and reliability.  The trust that consumers place in the Driscoll's brand when making purchasing decisions represents an invaluable asset—benefitting not only Driscoll's but also its employees and network of independent growers—developed through sustained and considerable investment.

**B.      Driscoll's Berries Undergo Rigorous Quality and Safety Standards to Meet Its Commitment to Growing the Finest Berries in the World**

27.      Driscoll's brings its berries to consumers through a carefully structured three-step process.  First, Driscoll's develops proprietary strains of berries, investing in research and breeding programs designed to produce fruit of exceptional quality, flavor, and consistency.  Second, Driscoll's engages with independent growers who cultivate these berry varieties in accordance with Driscoll's food safety and quality standards.  Third, Driscoll's distributes the harvested berries to grocery stores and markets around the world in Driscoll's branded containers, ensuring that consumers can readily identify the source of the product at the point of sale.  Safety is a top priority throughout each of these stages.

28.      **Developing berry varieties.**  Driscoll's research and development teams use natural breeding methods to create patented varieties of berries.  Working together as a team of agronomists, breeders, sensory analysts, plant health scientists, and entomologists, Driscoll's berry innovators select berries that delight consumers, resist disease, ship well, and arrive fresh at the store.[3]  These innovators work to develop the best berries possible by studying thousands of potential plants, selecting only a small portion for commercial production, and using proven natural traditional breeding processes such as hand cross-pollination (Driscoll's berries are not genetically modified).  Driscoll's then builds plant supply through carefully selected nurseries where the company grows plants, protects plant health, and provides independent growers with various patented varieties.

29.      When independent growers who grow Driscoll's berries receive these plants, it marks the beginning of a year-round collaboration that Driscoll's continues to build one grower at a time.  Because peak berry seasons occur at different times of the year in different places, Driscoll's berries

---

[3] *Berry Innovators*, DRISCOLL'S, https://www.driscolls.com/about/berry-innovators (last visited June 9, 2026).

DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568

are grown on family farms throughout the world in growing regions that are carefully selected for their soil, climate, and other environmental factors, including in Watsonville, Salinas, Oxnard, Santa Maria, Florida, the Pacific Northwest, New Jersey, North Carolina, British Columbia, Central Mexico, Baja California, and Peru.

30. **Growing berries.** Because Driscoll's berries are grown outside in a dynamic biological environment, the grower's challenge is to work with nature, using years of experience and know-how to get the very best out of each berry plant.[4] The goal of every Driscoll's grower is to shape, rather than control, the biological diversity of their fields, with a minimum amount of agricultural inputs. To that end, Driscoll's invests substantial resources in developing and employing natural forms of pest control and plant resilience, in both its organic and non-organic certified farms. For example, Driscoll's plant health team works with its breeders to understand the qualities of plants that are more resistant to disease and then helps them produce varieties that are naturally more disease resistant.[5] Growers also frequently use "cover crops" to keep plants healthy, rotating berry fields with other plants from season to season to help prevent disease and encourage soil health and soil structure. Driscoll's entomology team are experts in identifying opportunities to use predatory insects that keep pests at bay. They spend significant time in the lab researching the effects and benefits of bugs on the farm. Entomologists also evaluate the landscape and suggest practices that increase biodiversity of the area. They share this information with growers and others in the industry to further collective knowledge on the subject. Introducing more native crops brings in more beneficial bugs to increase resilience of the crops without the use of synthetic inputs.

31. **Upholding strict quality and safety standards throughout the growing process.** Driscoll's aligns with its network of independent growers to meet the company's expectations for quality, compliance, food safety, and production.[6] Driscoll's educates its independent growers

---

[4] *How We Grow Our Berries*, DRISCOLL'S, https://www.driscolls.com/about/Our-Practices/How-We-Grow (last visited June 9, 2026).

[5] *Keeping Our Berries in Top Form*, DRISCOLL'S, https://www.driscolls.com/about/berry-innovators/Plant-Health (last visited June 9, 2026).

[6] *Driscoll's Food Safety Program*, DRISCOLL'S, https://www.driscolls.com/about/Our-Practices/Food-Safety (last visited June 9, 2026).

9

DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568

about company policy and enforces strict adherence to rigorous quality and safety standards. Its independent growers are responsible for adhering to federal, state and local food safety regulations.

32. Next to taste, Driscoll's has made food safety the single most important focus of growing berries. Its berries are grown, harvested and shipped with strict standards of care and its rigorous food safety standards apply regardless of where the berries are grown. Driscoll's Food Safety Programs have been developed from decades of research, consumer feedback and close cooperation with food safety experts as well as state, federal and international regulatory agencies. It is founded on the principles of Good Agriculture Practices ("GAPs") established by the United States Food and Drug Administration ("FDA") and reinforced through education, laboratory testing and annual third-party audits. Driscoll's employs independent third-party auditors to verify that GAPs are being followed on every farm. Third-party audits are performed in the fields, cooling facilities, and distribution facilities to monitor soil, water, fertilizer use, pest control methods, harvest practices, and food safety and security procedures. The results of these audits are reviewed by Driscoll's food safety staff, who work to ensure that any issues are addressed and corrective measures verified.

33. In the United States, federal and state laws strictly regulate the use of pesticides.[7] The United States Environmental Protection Agency ("EPA"), FDA, and state and county agencies all have regulatory authority governing the safe use of pesticides. All independent growers around the world who grow Driscoll's berries must adhere to local and federal laws applicable to that growing region as well as country specific import and export regulations. Driscoll's independent growers are leaders in the practice of Integrated Pest Management (IPM). IPM employs a combination of natural and synthetic means to reduce disease and pest pressures. IPM employs constant field monitoring and also includes the use of beneficial organisms to control damaging pests. Driscoll's independent growers are free to choose which Integrated Pest Management methods they use. Regardless of the pest control method, all pesticide use must be in compliance with federal and state laws.

---

[7] *Id.*

34. Driscoll's has made a commitment to significantly increase the production of organic berries and utilizes its experience in organic farming to reduce the use of synthetic materials (including pesticides) in all of Driscoll's products. All of Driscoll's USDA-certified organic berries, regardless of growing region, are 100% certified according to the United States Department of Agriculture ("USDA") National Organic Program.[8] Before a product can be labeled "organic," a government-approved certifier inspects the farm where the food is grown to make sure the growers is following all the rules necessary to meet USDA organic standards. To be considered certified, land must be free of chemical inputs for at least three years prior to certification and growers must exclude the use of synthetic pesticides, herbicides, fertilizers or genetic engineering. Certified organic operations must have an organic system plan and records that verify compliance with that plan. Operators are inspected annually and random audits assure standards are being met. In addition to annual inspections, Driscoll's closely monitors all inputs used by its organic growers and regularly visits their farms, and takes an active part in conducting ongoing education.

35. **Delivering berries to people around the world.** Driscoll's engages with its growers to deliver berries that are fresh and ready to eat. Driscoll's builds state-of-the-art cooler facilities near all of its farming regions to cool berries to the optimal temperature as quickly as possible after harvest. Each morning, Driscoll's independent growers pick up their clamshell containers at the cooler, hand-pick the berries in the field, and return them to a nearby Driscoll's cooler within hours. The berries are then tagged, inspected for quality and immediately placed into refrigeration tunnels to bring them to optimal storage temperature. Trucks are inspected for cleanliness and the fruit is wrapped to ensure quality. Driscoll's ships its berries as soon as possible after harvest to ensure they arrive at stores fresh, ripe, and delicious.

36. Driscoll's delivers its berries to customers in proprietary branded clamshell containers bearing the Driscoll's name, logo, and trade dress. These branded clamshells serve as a direct communication between Driscoll's and the consumer, conveying a promise that any berry purchased in packaging bearing the Driscoll's name has met Driscoll's exacting standards and can be trusted

---

[8] *What Is Organic?*, DRISCOLL'S, https://www.driscolls.com/about/Our-Practices/organics/What-is-Organic (last visited June 9, 2026).

11

DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568

and enjoyed with confidence.  By placing its brand on each container that reaches the consumer, Driscoll's stakes its reputation on the quality, freshness, and safety of every berry inside, and consumers have come to rely on that branded packaging as an assurance that the product within is reliable, premium, and worthy of their trust.



*Figure 1: Driscoll's Branded Berry Containers[9]*

**C.     Defendants Are Waging a Coordinated Campaign Against Driscoll's and its Employees That Include Falsehoods and Misleading Information, Coupled with Threatening and Harassing Posts, Aimed At Damaging Driscoll's Brand and Consumer Goodwill for Their Commercial Gain**

37.     Beginning on or about April 29, 2026 and continuing through to the date of filing, Defendants have authored and published at least 67 posts over approximately 25 days across several social media accounts that they own and control: (a) the Instagram, Facebook, X, LinkedIn, TikTok, and Threads accounts Localize - Farmers Market (@Localizefood.app) and localize.explained; (b) Defendant Zoidis's Instagram, Threads, TikTok, X, Facebook, LinkedIn accounts under his name or the account name @zephzoid; and (c) Defendant Stoll's Instagram, Threads, TikTok, X, Facebook, LinkedIn accounts under his name or the account name @grantonsoil.

---

[9] *Our Heritage*, DRISCOLL'S, https://www.driscolls.com/about/heritage (last visited June 9, 2026).

38.     On information and belief, Defendants themselves created the content of each post and the same or substantially similar content, themes, and imagery were published across all three accounts in a concerted manner and as part of a campaign to attack Driscoll's and its employees and divert consumers to and advertise Localize.

**D.      Defendants Are Targeting Driscoll's Employees and Growers with Threatening and Harassing Posts**

39.     In numerous posts by Defendants across several social media platforms, Defendants include photographs of various Driscoll's employees and independent growers in their advertisements of Localize.

40.     These photographs, coupled with incendiary and unsupported accusations that Driscoll's and its employees are causing cancer in children, are threatening and harassing, and have incited their followers and other users to call for violence against Driscoll's employees and their families.

41.     For example, on April 30, 2026, Defendant Stoll posted on Instagram photographs of one of Driscoll's front-desk receptionists[10], falsely accusing her and Driscoll's of causing cancer in children.  The post provoked one user to make an antisemitic comment, "Driscoll's = ✡ ."  *See* Ex. H.

---

[10] Driscoll's omits the names of the employees, executives, and independent growers depicted in Defendants' posts so as not to make them further targets of Defendants and their followers' threats.

DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568



*Figure 2: Screenshot of April 30, 2026 Post by Defendant Stoll[11]*

42.    In a May 9, 2026 post by the account "Localizefood.app" on Instagram, TikTok, X, and Facebook, Defendants posted a photograph of a Driscoll's employee and an independent grower, repeating the false accusation that Driscoll's causes cancer in children.  Ex. I. at 1.  On that same day, in response to these accusations, one viewer posted "**KI LL THE OWNERS**."  *Id*. at 2 (emphasis added).

---

[11] This screenshot depicts an edited excerpt of the April 30, 2026 post.  An unedited screenshot of the post is attached hereto as Ex. H and incorporated by reference.

14



*Figure 3: Screenshot of May 9, 2026 Post by Localize[12]*

43.    Three days after Defendants' post incited one of their followers to call for the death of Driscoll's "owners," Defendant Zoidis posted photographs of several Driscoll's executives and Board Members with false accusations that the company they lead causes cancer in children and is responsible for poisoning a number of farmworkers in Watsonville.  Ex. J. at 1.  The post, which Defendant Zoidis tagged with the song entitled "**No Time for Caution**," predictably provoked several more violent threats to Driscoll's and its employees: "Oh itl [sic] come. Driscolls brass lives here too. **Let's tell em. And their kids**." *Id*. at 2 (emphasis added).  Another viewer wrote, "I can stop this." *Id*. at 3.  Another wrote: "**They will listen to their Fields being sallted [sic] and burned**." *Id*. at 4 (emphasis added).  And yet another wrote: "If they spray pesticide, **then we need to spray bullets.**" *Id*. at 5 (emphasis added).

---

[12] This screenshot depicts an edited excerpt of the May 9, 2026 post.  Unedited screenshots of the post are attached hereto as Ex. I and incorporated by reference.

DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568



*Figure 4: Screenshot of May 12, 2026 Post by Defendant Zoidis[13]*

44.     On May 18, 2026, Defendant Stoll posted in a video on TikTok a photograph of a Driscoll's employee handing out blankets at a charity event, repeating the false accusation that she and Driscoll's cause cancer in children.  Ex. K.  The post, as Defendants knew or should have known based on their previous posts, provoked viewers to threaten: "if this were China **those executives would be <u>rightfully</u> put to death**" and another to write, "Very on brand for the American Zionist regime one day ppl will realize this is all by design."  Fig. 5 (emphasis added); Ex. K. at 4.

[13] This screenshot depicts an edited excerpt of the May 12, 2026 post. Unedited screenshots of the post are attached hereto as Ex. J and incorporated by reference.

16




*Figure 5: Screenshot of May 18, 2026 Post by Defendant Stoll*[14]

45.     Defendants' social media posts have caused the targeted employees to experience substantial harm, including fear, loss of sleep, anxiety, loss of appetite, and severe emotional distress.  These harms are particularly acute because the targeted employees live and/or work in the very county where Defendants have publicly accused them of poisoning children, amplifying their reasonable fear that Defendants or their followers would act on the violent threats posted in response to Defendants' content.  The proximity of these employees to the community inflamed by

---

[14] Unedited screenshots of the post are attached hereto as Ex. K and incorporated by reference.

DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568

Defendants' false accusations places them in immediate and ongoing danger. For example, the receptionist targeted by Defendants' posts would be the first line of defense at Driscoll's headquarters should any individual arrive to do as threatened: "spray bullets." This in turn has damaged and harmed Driscoll's, which depends on the safety and wellbeing of its employees.

46. In an effort to protect its employees, Driscoll's requested that Defendants remove these posts on May 27, 2026, Ex. L, putting Defendants on notice of what they should have already known: their posts were perceived as threatening and harassing. *Id*. Yet, Defendants refused to remove them.

**E.    The Photographs Were Used by Defendants to Advertise Their Product Without Driscoll's or the Employees' Authorization or Consent**

47. Each of the above-described photographs, as well as numerous others (collectively, "Infringing Photographs"), were taken by Defendants from Driscoll's website or accounts without permission from Driscoll's or any of the individuals depicted.

48. Each of the Defendants' posts that include Infringing Photographs are advertisements for Localize. Defendants are using these posts to divert business away from and to damage Driscoll's so that more consumers will purchase a subscription to the Localize App, where Defendants allow consumers to purchase berries from alternative sources.

49. While each of the Defendants' posts that include Infringing Photographs promote Localize, none are, purport to be, or even attempt to be a comparison between berries purchased from Driscoll's and those that would be purchased from a farmer that works with Localize. For example, even when the Infringing Photographs used in a post by Defendants are of Driscoll's berries (which most are not), the purpose of including such a photograph is not to aid consumers in comparing the quality of berries (*i.e.*, a side-by-side). Rather, it is part of Defendants' larger campaign to shame Driscoll's employees and provide viewers a target at which to direct their fear and hate generated by Defendants' false and misleading accusations.

50. None of the photos of employees contribute to the content of Defendants' promotional posts or constitute comparative advertising. They merely serve to intimidate, embarrass, and threaten these individuals. For example, Defendants do not suggest that the Driscoll's receptionist

18

has any role in determining or carrying out any of the alleged pesticide use that Defendants argue should cause consumers to use their product instead of purchasing Driscoll's berries.

**F.      In addition to threatening and harassing Driscoll's employees, Defendants are spreading false and misleading information in their commercial advertising and promotional content**

51.     In their posts advertising and promoting Localize, Defendants make several false and misleading claims about Driscoll's farming practices and the safety of its products.

52.     In the April 30 post, Ex. H, Defendant Stoll attempts to persuade consumers to use Localize to purchase berries instead of purchasing Driscoll's berries by claiming, among other things, that "Santa Cruz county in California; one of [Driscoll's] main growing regions reports childhood cancer rates at 38% percent [sic] higher than the state average."  In the May 9 post, Ex. I, Defendants again attempt to persuade consumers to use Localize to purchase berries instead of purchasing Driscoll's berries by claiming that "Residents near Driscoll's farms in Monterey County report childhood cancer rates 38% higher than the state average."  In the May 12 post, Ex. J, Defendant Zoidis makes a similar claim in advertising and promoting Localize, stating that Driscoll's berries are "[p]rimarily grown in one California region…where kids also have nearly 40% higher cancer rates."  In the May 18 post, Ex. K, Defendant Stoll repeats a similar claim in an effort to divert Driscoll's customers to Localize, stating that "Residents near Driscoll's berry farms report 38% higher childhood cancer."  In a May 23 post that concludes by encouraging consumers to "Shop For Local Berries In Season" using Localize, Ex. M at 1, Defendant Stoll posted another promotional series of images claiming that "Driscoll's Berries rap sheet reads like a crime thriller . . . 2026: Santa Cruz County - their backyard - has 38% higher childhood cancer rates than the state average."  *Id*. at 2.

53.     These statements are literally and impliedly false, in that they erroneously and baselessly lead consumers to believe that Driscoll's farms in Santa Cruz and Monterey Counties and their berries cause cancer in children.  There is no such evidence to support either claim, which Defendants knew or should have known at the time they published the accusation.

54.     Driscoll's does not own or operate farms in Santa Cruz County or Monterey County, and there is no evidence of any increased childhood rate of cancer in children residing in Monterey County at all.  There is also no evidence that pesticides approved by federal and state regulators caused any increased rate of childhood cancer in Monterey or Santa Cruz counties, nor is there any evidence that any grower associated with Driscoll's or Driscoll's itself used any unsafe pesticides that could possibly contribute to increased cancer rates in children.  To the contrary, all independent growers for Driscoll's are only permitted to use pesticides that have been found to be safe by the EPA, FDA, and state regulators.

55.     There is also no evidence that the consumption of Driscoll's berries causes any increased rate of childhood cancer.  Indeed, government health authorities have found that berry consumption is associated with reduced cancer risk.[15]  And, in June 2026, the Santa Cruz County Public Health Division, in partnership with the University of California San Francisco Greater Bay Area Cancer Registry and the California Department of Public Health California Cancer Registry, conducted a detailed review of concerns regarding pesticides and their possible link to childhood cancer rates in South Santa Cruz County, where Defendants claim Driscoll's farms are poisoning children, and found among other things that (i) childhood cancer rates in Santa Cruz County generally were not significantly higher than rates seen across California, in contravention to Defendants' claims; (ii) South County, where agriculture is grown in Santa Cruz, did not have a statistically significant increase in childhood cancer throughout the five-year study period; and (iii) there were no increases in several cancer types that research has linked to pesticide exposure.[16]

56.     Yet, consumers who are exposed to Defendants' posts are misled into believing that Driscoll's farms and berries cause cancer in children, harming Driscoll's and consumers.  For example, one viewer of this false and misleading claim wrote, "@driscollsberry causes cancer…

---

[15] *See, e.g.*, Aleksandra S. Kristo, Dorothy Klimis-Zacas & Angelos K. Sikalidis, *Antioxidants and Cancer Prevention,* ANTIOXIDANTS, Oct. 19, 2016, at 23 (stating that edible berries have been demonstrated to delay or suppress cancer); *see also Cancer Fighting Fruits,* DRISCOLL'S, https://www.driscolls.com/Article/Fight-Cancer-with-Antioxidant-Bursting-Berries (last visited June 9, 2026) (describing how consuming berries can help reduce the risk of cancer).

[16] *Childhood Cancer Incidence in Santa Cruz County (1988-2022)*, SANTA CRUZ CNTY. HEALTH SERVS. AGENCY, https://www.santacruzhealth.org/ChildhoodCancerStudy.aspx (last visited June 9, 2026).

DRISCOLL'S, INC.'S COMPLAINT
Case No. 5:26-cv-05568

will not be buying them anymore @wholefoods @heb #cancer #driscollsberry". Ex. N at 1. Another wrote, "You give ppl cancer u should burn in hell." *Id*. at 2. Another wrote, "I stopped buying their fruit as soon as I heard of their horrible choices to poison me and my family. More and more people are passing up their containers of poisoned fruit." *Id*. at 3. And another wrote, "They poisoned the children and gave them cancer." *Id*. at 4. One viewer reacted, "We won't buy your poison any longer." Ex. O. Another reacted, "Boycott! Toxic cancer BS." Ex. N at 2.

57.    In the May 18 post that caused numerous viewers to claim they would no longer purchase Driscoll's berries, Defendant Zoidis also makes the false and misleading claim that Driscoll's caused and was fined in connection with "a drift event near Watsonville [that] sickened 15 agricultural workers." Ex. P. This is demonstrably false. Driscoll's was not involved in causing nor was fined in connection with any drift event in Watsonville that sickened 15 agricultural workers.

58.    These statements are not, and would not reasonably be understood as, mere opinion or rhetorical hyperbole–they are presented as fact.

59.    Defendants knew their statements were false when they made them, or made them with reckless disregard for their truth or falsity. Defendants possessed no evidence establishing any causal link between Driscoll's and childhood cancer.

60.    Defendants' posts that include these false and misleading claims have been viewed, on information and belief, over one hundred thousand times and been liked by tens of thousands of viewers.

61.    Many consumers who view these claims decide to no longer purchase Driscoll's berries. A sampling of comments on these posts include: "I'll never buy @driscollsberry again that's for sure"; "Boycott Driscolls!"; "I won't buy their poison any more"; "I'm pissed! I've been giving my son the organic for years. I will never buy Driscolls again and will make sure everyone I care about knows this."; "Ive not bought Driscoll for years. I'll go without, or buy frozen."; "@driscollsberry not ever buying your products again. #cancersucks💔"; "Goodness!!! They WERE my fav brand!"; "I will not buy your cancer produce again. 👆 @driscollsberry"; and

"Never buying Driscoll Berries ever again! Thank you for bringing awareness to all of us!" *See* Exs. K, Q.

62. On information and belief, many of the viewers of Defendants' false and misleading claims instead signed up for a subscription version of Localize's app.

63. Driscoll's notified Defendants on May 27, 2026 and again on June 1 and 2, 2026 that its statements linking Driscoll's farms and berries to increased cancer rates or worker safety concerns were false and misleading. Yet, Defendants have refused to cease from disseminating these claims, which on information and belief have been viewed thousands of times since Driscoll's put them on notice.

64. Each post containing false and misleading information was commercial in nature and made for the purpose of promoting Defendants' Localize business and diverting sales from Driscoll's to Localize's platform. For example:

- Multiple posts displayed the Localize app interface, including a "DEALS MAP" and category listings such as "Fresh Fruit," "Grassfed Beef," "Pasture Chicken," "Pasture Eggs," "Raw Dairy," and "Fresh Vegetables," on slides after the false statements about Driscoll's.

- Mr. Zoidis's @zephzoid May 12, 2026 post concluded with a display of the Localize app and the directive to "Localize and buy" from local producers listed on the app, rather than purchasing from Driscoll's.

- Mr. Stoll's @grantonsoil posts similarly displayed the Localize app interface and directed viewers to purchase through Localize as an alternative to Driscoll's products.

65. Defendants profited by diverting consumers, including consumers of Driscoll's berries, from purchasing berries from Driscoll's to purchasing berries through the Localize app. For example, each consumer who was persuaded by Defendants' false statements to abandon Driscoll's products and subscribe to the Localize app generates approximately $59.99 per year in revenue for Defendants.

66. Defendants' conduct is ongoing. Unless enjoined, Defendants will continue to threaten and harass employees, misappropriate Driscoll's photographs, and publish false and

misleading statements, causing irreparable harm to Driscoll's business, employees, reputation, and goodwill.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (False Advertising Under the Lanham Act – 15 U.S.C. § 1125(a)(1)(B)

### – Against All Defendants)

67.    Driscoll's realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

68.    In their commercial posts, Defendants make false and misleading statements of fact concerning Driscoll's products and operations, including the false statement that Driscoll's operations cause cancer in children and Driscoll's caused and was fined for a drift event near one of its farms.  Defendants' statements constitute false descriptions and representations of fact about the nature, characteristics, and qualities of Driscoll's goods and commercial activities within the meaning of 15 U.S.C. § 1125(a)(1)(B).

69.    Defendants' statements were made in commercial advertising and promotion.  Each post constitutes commercial speech that proposed a commercial transaction, promoted Defendants' competing products through the Localize app, and directed consumers to purchase through Defendants' platform.  The posts were made by Defendants as commercial competitors of Driscoll's for the purpose of influencing consumers' purchasing decisions.

70.    Defendants' false statements actually deceived or have the tendency to deceive a substantial segment of their audience.  Viewers of Defendants' posts stated in response that they believed Driscoll's caused cancer in children (and adults) and would cease purchasing Driscoll's products, call for boycotts, and switch to alternative sources.  *See, e.g.*, Ex. N.  This is also exemplified by the many threats incited by Defendants' posts against Driscoll's employees, whose images were associated with Defendants' false and misleading claims.

71.    Defendants' deception is material in that it concerns the safety and quality of Driscoll's products and has and is likely to continue to influence the purchasing decisions of consumers and cause commercial harm to Driscoll's.  The statements concern Driscoll's business,

23

products, and fitness to conduct its trade, and tend directly to injure Driscoll's in its business and to expose Driscoll's to hatred and contempt.

72.     Defendants caused their false statements to enter interstate commerce through publication on nationally available social media platforms, including but not limited to Instagram, TikTok, Facebook, X, LinkedIn, and Threads.  Moreover, Localize is registered in Texas and caused the false and misleading statements to be disseminated through the internet in California.

73.     Driscoll's has been and is likely to be injured as a direct and proximate result of Defendants' false statements, including through diversion of sales, loss of customers, threats to the safety and wellbeing of its employees, and injury to its commercial reputation and goodwill.  Unless enjoined, Defendants' false and misleading advertising is likely to continue causing confusion and deception among consumers regarding the safety of Driscoll's products, while Defendants unfairly enjoy sales and subscriber revenue to which they are not entitled.

74.     Driscoll's has also been commercially harmed by Defendants' practice of publishing false statements alongside unauthorized photographs of Driscoll's employees, which has exposed those employees to threats of violence.  As a direct result, Driscoll's has incurred costs associated with addressing employee safety concerns and their mental wellbeing and has experienced diminished workforce productivity.

75.     Defendants' conduct was willful and deliberate.  Over a sustained 25-day period, Defendants published at least 67 separate posts containing false and misleading statements about Driscoll's, demonstrating a systematic and relentless campaign.  Defendants knew (or were recklessly indifferent to the fact) that their statements were false and misleading, and maintained their posts even after being put on notice by Driscoll's.  Driscoll's is entitled to recover Defendants' profits, Driscoll's damages, treble damages, and the costs of the action pursuant to 15 U.S.C. § 1117, and to injunctive relief pursuant to 15 U.S.C. § 1116.  As shown above, this is an exceptional case warranting an award of reasonable attorneys' fees.  Driscoll's has no adequate alternative remedy at law for Defendants' continuing acts of false advertising.

76.     Driscoll's does not seek to hold Defendants liable for any speech by third parties. Rather, Plaintiff's claim is based on Defendants' own conduct, *i.e.*, Defendants' own knowing

publication of false and misleading statements, Defendants' own unauthorized reproduction and display of copyrighted photographs for their own commercial gain, and Defendants' targeting of Driscoll's employees.

77. Defendants' conduct constitutes false advertisement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For injunctive relief enjoining Defendants from making and disseminating the false and misleading statements of fact alleged herein, and requiring Defendants to remove the false and misleading posts from all platforms on which they appear;

B. For an order, pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with the Court and serve upon Driscoll's, within thirty (30) days after entry of any injunctive order, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

C. For an order requiring Defendants to account for all revenues and profits earned by Defendants as a result of the conduct alleged herein, including all subscription revenues generated by the Localize app during and after the period of Defendants' false advertising campaign;

D. For Defendants' profits arising from the conduct alleged herein, and increasing such profits as the Court finds just, in accordance with 15 U.S.C. § 1117(a);

E. For actual damages caused by Defendants' false advertising, and trebling of such damages in accordance with 15 U.S.C. § 1117(a);

F. For compensatory, general, and special damages according to proof;

G. For reasonable attorneys' fees and costs of suit, including under 15 U.S.C. § 1117;

H. For pre-judgment and post-judgment interest as permitted by law; and

I. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of any issue triable of right by a jury.

Date: June 9, 2026                                   **WILLKIE FARR & GALLAGHER LLP**


                                                     By:    */s/ Nicholas Reddick*
                                                            Nicholas Reddick

                                                     Nicholas Reddick
                                                     R. Till Hackstein
                                                     Imahn Daeenabi
                                                     333 Bush Street, 34th Floor
                                                     San Francisco, CA 94104

                                                     *Attorneys for Plaintiff*