United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DRISCOLL'S, INC.,
Plaintiff,

v.

LOCALIZE LLC, et al.,
Defendants.

Case No. 26-cv-05568-CRB

**ORDER DENYING MOTIONS TO DISMISS; GRATING MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Driscoll's, Inc. ("Driscoll's") brings False Advertising and Copyright Infringement claims against Defendants Localize LLC ("Localize"), Zephyr Max van Olphen Zoidis ("Zoidis"), and Grant Stoll ("Stoll") (collectively, "Defendants"). First Amend. Compl. ("FAC") (dkt. 18) at 1, 29–32.

The parties filed two Motions to Dismiss and a Motion for Preliminary Injunction. First, Zoidis filed a Motion to Dismiss for lack of personal jurisdiction. Zoidis's Mot. (dkt. 42) at 4. Second, Defendants collectively filed a Motion to Dismiss for failure to state a claim. Defs.' Mot. (dkt. 44) at 1–2. Because the Court has proper jurisdiction over Zoidis and Driscoll's sufficiently states its claims, the Court **DENIES** both motions to dismiss. Driscoll's filed a Motion for Preliminary Injunction. Prelim. Mot. (dkt. 22). Because Driscoll's is likely to succeed on the merits, is likely to suffer irreparable harm, the balance of equities tips in its favor, and the public interest favors injunctive relief, the Court **GRANTS** the Motion for Preliminary Injunction. Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for resolution without oral argument.

## I. BACKGROUND[1]

Driscoll's is a California-based agriculture company, responsible for the sale of "approximately one-third of all berries sold in the United States." FAC ¶ 11. Driscoll's develops patented berry varieties, which are licensed to over 900 independent growers in twenty-one countries. Id. ¶¶ 11, 23. The company "develops, packages, transports, and sells" its berries to consumers in "nearly fifty countries" under the Driscoll's brand name. Id. ¶¶ 11, 22.

Localize is a Texas-based company, founded in or around January 2026. Id. ¶ 14. Localize's main product is a mobile application called "Localize – Farmers Market" to "connect[] consumers to local farms, ranchers, and food producers." Id. Localize charges users an annual membership fee of $59.99 to access the app. Id. Once subscribed, Localize connects consumers to a network of affiliated farmers, from whom they can purchase berries. Id. Localize advertises itself as an alternative to purchasing berries from large agricultural companies. Id.

Stoll and Zoidis co-founded Localize. Id. ¶ 12. Stoll and Zoidis co-operate Instagram and X social media accounts for Localize. Id. They also each "authored, published, and disseminated" posts promoting and advertising Localize on their respective personal social media accounts. Id. ¶¶ 13, 38. Beginning on or about April 29, 2026, Defendants authored and published "at least 97 posts over approximately 25 days" across business and personal social media accounts.

Driscoll's alleges Defendants are engaged in a "coordinated and unlawful social media campaign" seeking "to spread false and misleading information" about Driscoll's products and operations and using Driscoll's copyrighted photographs. Id. ¶ 1. Driscoll's alleges that the Defendants' posts make "several false and misleading claims . . . presented as fact" about Driscoll's farming practices and the safety of its products to damage Driscoll's reputation and "divert business away from Driscoll's." Id. ¶¶ 49, 54, 61. For several posts, Driscoll's details the number of views, likes, and shares as of filing.

---

[1] The following allegations are taken from the FAC.

Id. ¶ 64. Driscoll's further identifies each post, the account and platformed used, the date posted, and whether it included a copyrighted photograph. Id. ¶ 49, Ex. O. Some examples include:

- Stoll's April 30, 2026, post ties Driscoll's operations in Santa Cruz County to reports of "childhood cancer rates at 38% higher than the state average." Id. ¶ 55, Ex. I.
- Localize's May 9, 2026, post makes similar assertions, with one caption reading, "Residents near Driscoll's farms in Monterey County report childhood cancer rates 38% higher than the state average." Id. ¶ 43, Ex. J, at 1. The final slide of the post is an advertisement for the Localize app. Id. ¶ 43, Ex. J, at 2. On this post, users posted comments to "boycott" Driscoll's, "KI LL [sic] THE OWNERS," and made representations that they requested their grocery stores "not to carry this brand." Id. ¶ 55, Ex. J, at 1–2.
- Zoidis's May 12, 2026, post asserts "Driscoll's supplies . . . berries . . . primarily grown in one California region . . . where kids also have nearly 40% higher cancer rates." Id. ¶ 55, Ex. K, at 1. On this post, users commented threats: "[Driscoll's] will listen to their Fields being sallted [sic] and burned"; "If they spray pesticide, then we need to spray bullets." Id. One user commented, "I'm not buying Driscoll [sic] anymore." Id.
- Zoidis's May 18, 2026, post asserts that Driscoll's was fined in connection with a pesticide drift event in Watsonville, California. Id. ¶ 60, Ex. T.
- Stoll's May 23, 2026, post asserts "Driscoll's berries rap sheet reads like a crime thriller." Id. ¶ 55, Ex. Q, at 2. The last slide of the same post concludes with an advertisement of the Localize app, overlayed on a map of California, encouraging consumers to "Shop for Local Berries In Season." Id. ¶ 55, Ex. Q, at 1.

- Several other posts include "dark imagery," such as "skulls and crossbones" or "sick children," alongside statements about Driscoll's products and operations. Id. at 22–23.

Driscoll's maintains that the statements that Driscoll's was involved or fined in connection with the pesticide drift effect are "demonstrably false" and that there is "no such evidence" to support the statements connecting Driscoll's products or operations to cancer rates. Id. ¶¶ 56, 60. Driscoll's alleges that Defendants "knew or should have known" as much at the time they posted. Id. ¶ 56.

Several of Defendants' posts include photographs of Driscoll's employees and independent growers. Id. ¶ 40, Exs. J, K, L. Driscoll's alleges that the posts were meant to "intimidate, embarrass, and threaten the depicted individuals." Id. ¶ 51. Coupled with "incendiary and unsupported accusations" that Driscoll's is responsible for causing childhood cancer, Driscoll's contends that the posts incite users to "call for violence" against Driscoll's property, employees, and their families. Id. ¶ 41. As a result, Driscoll's asserts that the targeted employees have experienced substantial harm, including fear, loss of sleep, anxiety, loss of appetite and distress. Id. ¶ 46.

Several posts incorporate photographs from Driscoll's website or accounts without Driscoll's permission. Id. ¶ 48, Ex. N. Driscoll's owns a valid United States copyright in the identified photos, registered on or after June 17, 2026. Id. ¶¶ 52–53, Ex. P.

Driscoll's requested that Defendants remove the posts on May 27, 2026. Id. ¶ 47, Ex. M. Defendants did not do so. Id. Despite additional attempts to contact Defendants on June 1 and 2, 2026, Driscoll's alleges that the Defendants' conduct remains ongoing. Id. ¶¶ 70, 74.

## II. LEGAL STANDARD

### A. Lack of Personal Jurisdiction

Under Rule 12(b)(2), it is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984). To withstand a motion to dismiss, the plaintiff need only demonstrate facts sufficient to

United States District Court
Northern District of California

show the existence of "minimum contacts" between the defendant and the forum state such that the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

### B. Failure to State a Claim

Rule 12(b)(6) governs dismissal for failure to state a claim. Plaintiffs do not need to provide "[d]etailed factual allegations" to survive a motion to dismiss, but must allege sufficient factual matter that, if accepted as true, states a "claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts assess facial plausibility through a context-specific inquiry, drawing on their "judicial experience and common sense." Id. at 679. In considering a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. Los Angeles County, 487 F.3d 1246, 1249 (9th Cir. 2007).

For fraud-based claims, where the plaintiff alleges a knowing or intentional misrepresentation, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. 23andMe, Inc. v. Ancestry.com DNA, LLC, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018). Under this standard, Plaintiffs pleading fraud claims must state with particularity the circumstances constituting the fraud, or the "who, what, when, where, and how." Vess v. Civa-Geigy Corp. USA, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003). This heightened standard applies to Driscoll's false advertising claim, since they allege "Defendants' conduct was willful and deliberate." FAC ¶ 83.

### C. Preliminary Injunction

To obtain a preliminary injunction, the moving party must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The Ninth

Circuit applies a sliding scale approach, wherein a weaker showing on the merits can still support relief if the balance of hardships tips sharply in the plaintiff's favor, provided the other factors are satisfied. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

## III. DISCUSSION

The Court begins by addressing Zoidis's motion to dismiss for lack of personal jurisdiction. It then turns to Defendants' motion dismiss for failure to state a claim. Finally, because the Court DENIES both motions to dismiss, it then analyzes Driscoll's motion for preliminary relief.

### A. Personal Jurisdiction for Zoidis

Zoidis argues that this Court lacks personal jurisdiction over him as a nonresident defendant. Zoidis's Mot. at 7. He stipulates that his domicile is in Austin, Texas. Id. He maintains that he does not own or lease California property, does not maintain a California driver's license or voter registration, nor bank accounts or offices in California. Id. He argues that his at-issue social media posts were posted on "nationally and globally accessible platforms," concerning a company that operates and sells berries "internationally." Id. at 8–9.

Personal jurisdiction over a nonresident may be general or specific. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414–16 (1984). General jurisdiction exists when a defendant's contacts with the forum are so "continuous and systematic" as to render the defendant essentially "at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). For individuals, courts have general jurisdiction over those domiciled in the forum. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). Given his Texas domicile, here, the Court lacks general jurisdiction over Zoidis. Id.; see Zoidis's Mot. at 7.

Specific jurisdiction, in contrast, exists where (1) the nonresident defendant "purposefully direct[s] his activities or consummates some transaction with the forum or

United States District Court
Northern District of California

resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum;" (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden to satisfy prongs one and two. Id. If satisfied, the burden then "shifts to the defendant to 'present a compelling case' that exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

Analyzing the first prong, courts apply the "effects test" from Calder v. Jones for tort-based claims. See 465 U.S. 783, 787 (1984). Courts examine the defendant's own conduct to determine if they committed "(1) an intentional act, (2) expressly aimed at the forum state, (3) causing harm the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 805. Zoidis disputes the second element—that his conduct was not "expressly aimed" at California. See Zoidis's Mot. at 9. Zoidis argues that his posts did not geographically target California users, rather they were "posted on platforms accessible anywhere in the world." Id. But plaintiffs need not show that defendants have a "forum-specific focus" or engaged in "differential targeting." See Briskin v. Shopify, Inc., 135 F.4th 739, 757 (9th Cir. 2025) (overturning the differential targeting rationale as applied in AMA Multimedia, LLC v. Wanat, 970 F.3d 1201 (9th Cir. 2020)). Rather, a defendant operating an account on an interactive platform "expressly aims" wrongful conduct toward a forum state "when [the] contacts are [their] own choice and not 'random, isolated, or fortuitous,' . . . even if that platform cultivates a nation-wide audience for commercial gain." Briskin, 135 F.4th at 758 (quoting Ford Motor Co. v. Montana Eight Judicial Dis. Ct., 592 U.S. 351, 359 (2021)).

Zoidis argues that making statements about a California-based plaintiff, "posted on platforms accessible anywhere in the world," does not rise to the level of purposeful direction. Zoidis's Mot. at 8–9. Zoidis cites to Walden v. Fiore, which states that "mere injury to a forum resident is not a sufficient connection to the forum." 571 U.S. 277, 290

(2014). But Zoidis's reliance on Walden is misplaced. There, the court explicitly recognized that its holding did not extend to situations involving intentional torts "committed via the Internet." Id. at 290 n.9. Even Zoidis acknowledges that his conduct did more, by "referenc[ing] California locations" in posts from his personal accounts. Zoidis's Mot. at 9. Moreover, Driscoll's alleges many of Zoidis's posts "discuss[] events in California, spread false information about Driscoll's activities in California, and included images of employees, farmers, and facilities in California." Driscoll's Opp'n (dkt. 53) at 8. And the Localize advertisements included maps of California and references to California farms that sell berries. Id.; see FAC ¶ 55, Ex. Q, at 1. This is enough to find Zoidis purposefully directed his activities at California.

Analyzing the second prong, the Ninth Circuit uses a "but-for" test to assess if a claim "arises out of" forum-related activities: Plaintiffs must show that they would not have suffered the injury but for defendant's forum-related conduct. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007). Here, Driscoll's shows how the harm flows directly from Zoidis's posts referencing Driscoll's California-based operations and employees. For example, Driscoll's alleges its California-based employees suffered diminished wellbeing because Zoidis's social media posts included images of the employees, which allowed users to identify and personally threaten them. FAC ¶¶ 40–47, Exs. J, K, L. Thus, prong two is satisfied.

Satisfying the first two prongs, the burden shifts to Zoidis to show that the exercise of jurisdiction would not be reasonable. Zoidis argues as much. Zoidis's Mot. at 10. The Ninth Circuit evaluates seven factors to determine reasonableness: (1) the extent of defendants' purposeful interjection, (2) the burden on defendant of defending in the forum, (3) the extent of conflict with the sovereignty of the defendant's state, (4) California state interest in adjudicating the dispute, (5) the most efficient judicial resolution, (6) the importance of the forum to plaintiff's interests in convenient and effective relief, and (7) the existence of an alternative forum. Briskin, 135 F.4th at 761.

First, Zoidis argues that he has not purposefully interjected himself into California,

United States District Court
Northern District of California

given his domicile in Texas and the nationwide nature of his social media posts. Zoidis's Mot. at 8–9. But, as previously discussed, Zoidis's repeated and frequent social media posts discuss California locations and advertise local produce to California consumers. See FAC ¶ 55, Exs. K, Q. The first factor weighs in Driscoll's favor.

Second, Zoidis argues that he would be significantly burdened by defending a lawsuit in California. Zoidis's Mot. at 11. But courts are skeptical of such claims when a defendant conducts regular business with a resident of the forum. See Rudzewicz, 471 U.S. at 476 (holding that "it is presumptively not unreasonable" to require a defendant to submit to the burden of litigation in a forum where that defendant has himself created "continuing obligations between himself and residents of the forum"); Smagin v. Compagnie Monegasque De Banque, No. 2:20-cv-11236, 2024 WL 661185, at *4 (C.D. Cal. Jan. 25, 2025) (holding the inconvenience for an out of state defendant to litigate in California district court is "not unfair" given their "voluntary business dealings with an individual residing here"). Here, Zoidis co-founded and co-operates Localize with Stoll, a California resident. FAC at 4. Moreover, Courts have found that "advances in transportation and telecommunications" have significantly reduced the burden of out of state litigation. CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004). The second factor weighs in Driscoll's favor.

Third, Zoidis asserts that Texas has a "sovereign interest in adjudicating disputes involving its own domiciliary and companies organized under its laws." Zoidis's Mot. at 11. This factor requires an "examination of the competing sovereign interests in regulating [the defendant's] behavior." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1115 (9th Cir. 2002). Although Texas has some interest in regulating the conduct of its residents, Driscoll's complaint raises questions of federal law that are unaffected by local law and require identical analysis across states. AirWair Int'l Ltd. v. Schultz, 73 F. Supp. 3d 1225, 1239–40 (N.D. Cal. 2014). The third factor weighs slightly in Zoidis's favor.

Fourth, the forum state's interest in adjudicating the dispute weighs in Driscoll's favor as a California-based business, given California's interest in protecting its residents

United States District Court
Northern District of California

and business from tortious conduct that causes injury within the state. See Menken, 503 F.3d at 1060. The fourth factor weighs in Driscoll's favor.

Fifth, courts look to the location of witnesses and evidence to assess efficiency. Id. at 1061 (citation omitted). Zoidis asserts that the relevant documents and witnesses are in Texas. Zoidis's Mot. at 11. Driscoll's states that the employees allegedly harmed by Zoidis's posts live in California. Driscoll's Opp'n at 7–9. In sum, the location of evidence and witnesses is split between Texas and California. However, contrary to Zoidis's assertions, much of the key evidence at-issue is freely available online, accessible in both locations. The fifth factor is neutral.

Sixth, Zoidis argues that Driscoll's interest in convenient and effective relief does not override his due process considerations. Zoidis's Mot. at 11. However, the preceding analysis substantially undercuts his fairness concerns. The sixth factor weighs in Driscoll's favor.

Seventh, Zoidis argues that the Western District of Texas, Austin Division is an "adequate and available alternative forum." Zoidis's Mot. at 11–12. The availability of Texas as a possible forum does not make California unavailable or unreasonable by comparison. "[W]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 984 (9th Cir. 2021) (citation omitted). Zoidis has not made that showing. Thus, the seventh and final factor is neutral.

On balance, a plurality of the reasonableness factors weighs in favor of the exercise of jurisdiction. Thus, this Court DENIES Zoidis's motion to dismiss for lack of personal jurisdiction.

**B. Sufficient Claims Upon Which Relief Can Be Granted**

Defendants filed a motion to dismiss both Counts I and II, the false advertising and copyright infringement claims, respectively. See Defs.' Mot. The Court addresses the sufficiency of each claim in turn.

**1. False Advertising under the Lanham Act § 43(a)**

Section 43(a)(1)(B) of the Lanham Act "authorizes suit against persons who make false and deceptive statements in a commercial advertisement about their own or the plaintiff's product." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002); see 15 U.S.C. § 1225(a)(1)(B). To state a false advertising claim under the Lanham Act, a plaintiff must allege: (1) there is a false statement of fact by the defendant in a commercial advertisement about its own or another's product, (2) the statement actually deceived or has tendency to deceive consumers; (3) the deception is material, i.e. likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff was injured or is likely to be injured as a result of the false statement, either through direct diversion of sales or through lost goodwill. Southland Sod. Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

Defendants move to dismiss Driscoll's false advertising claims for failure to (a) plausibly plead commercial advertising or promotion in each challenged statement; (b) identify an actionable false statement of fact for posts about childhood cancer rates; (c) plead material deception and injury; or (d) establish liability for each Defendant. Defs.' Mot. at 6–10. Defendants do not challenge the pleadings' sufficiency as to the Southland test's interstate commerce element. See id.; Southland Sod. Farms, 108 F.3d at 1139.

**a. Commercial Advertising**

First, Defendants argue that Driscoll's allegations are conclusory in pleading that every challenged post was "commercial in nature" without identifying which of the approximately 97 posts proposed a transaction. Id. Defendants also argue that a general statement to "choose local" is not a commercial call to action under the Lanham Act. Id. But this oversimplifies Lanham Act liability. In Arrix, LLC v. NutriSearch Corp., the court found that an information newsletter that did not explicitly propose a commercial transaction nevertheless constituted commercial advertising or promotion under the Lanham Act because economic benefit was the primary purpose for the speech. 985 F.3d 1107, 1116–17 (9th Cir. 2021). Here, Driscoll's alleges with sufficient particularity that

Localize included information about their brand directly following the false statements about Driscoll's in each post. FAC ¶ 7 (emphasis added). That is enough to plausibly infer that Localize posted to advance their economic self-interest as a Driscoll's competitor.

Defendants counter that many of their posts concern matters of public interest: pesticide use, cancer rates, worker safety, and the conduct of a major agricultural company. Defs.' Mot. at 6–7. Yet, Defendants provide no authority to show that false claims that concern matters of public interest cannot constitute commercial speech. See id. On the contrary, courts routinely find that "speech that does not propose a commercial transaction on its face can still be commercial speech." See, e.g., Arrix, 985 F.3d at 1115. Courts find "strong support" for characterizing statements as commercial where "[1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." Id. at 115–16 (citing Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66–67 (1983). The posts here—which included information on how to download and subscribe to the Localize app—meet all three Bolger factors.

**b. Falsity Regarding Childhood Cancer Rates**

Defendants next argue that Driscoll's allegations do not identify an actionable false statement of fact. Defs.' Mot. at 7–8. Defendants argue that the statements about county-level cancer rates are not literally false, as they do not make a "casual conclusion that Driscoll's berries or operations caused cancer." Id. They further contend that "skull-and-crossbones imagery" cannot substitute for a "pleaded factual representation." Id.

Falsity under the Lanham Act includes both statements that are (1) "literally false," either on their face or by "necessary implication," or (2) "literally true but likely to mislead or confuse consumers." Southland Sod Farms, 108 F.3d at 1139. Driscoll's alleges that several posts that pair statistics about rates of childhood cancer and "dark imagery" with statements about Driscoll's practices are likely to mislead or confuse consumers. FAC ¶¶ 40–46, 54–59, 71, Ex. I ("Residents near Driscoll's farms in Monterey County report childhood cancer rates 38% higher than state average."). They are correct. Indeed, it is

hard to imagine a purpose for Defendant's posts about cancer rates beyond hoping viewers will infer that Driscoll's operations caused increased levels of cancer.

**c. Material Deception and Injury**

Defendants challenge the sufficiency of pleadings as to elements 2, 3, and 5, regarding deception, materiality, and injury. Defs.' Mot. at 8–9. Defendants argue that Driscoll's inclusion of a "handful of selected comments" does not equate to materiality, nor does Driscoll's reliance on the number of views, likes, shares, and comments on the posts. Id. at 8.

Regarding material deception, for "literally false" statements, deception and materiality are presumed. Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc., 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019) (citation omitted). For Defendants' posts tying Driscoll's to a "pesticide drift event" and related fines, Driscoll's alleges that the posts are "demonstrably false." FAC ¶¶ 56, 60, Ex. T. These statements are literally false under Lanham Act, and, therefore, actual deception and materiality can be presumed. See Factory Direct Wholesale, 411 F. Supp. 3d at 924.

Where the disputed statements are not literally false, but instead likely to mislead, plaintiffs must allege only a tendency to deceive to survive a motion to dismiss. Clorox Co. v. Reckitt Benckiser Grp. PLC, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019). Plaintiffs can then allege that potential deception is material by showing that (1) the statements are "likely to influence the purchasing decision" of consumers, Southland Sod Farms, 108 F.3d at 1139; or (2) the defendant's misrepresentations go towards "an inherent quality or characteristic of the product," Clorox, 398 F. Supp. 3d at 644.

For Defendants' posts including statements about cancer rates, Driscoll's sufficiently alleges that Defendants' posts have the tendency to deceive because they create false implications about the harms of Driscoll's produce and practices. FAC ¶¶ 40–46, 54–59, 71. This potential deception is material under either test. User comments show how the posts may be shaping purchasing decisions. FAC at Ex. Q ("I will not be buying Driscoll berries ever again."); Ex. K ("Never buying Driscoll Berries ever again! Thank



United States District Court
Northern District of California

you for bringing awareness to all of us!"). Other comments show how Defendants' claims about the health and safety of Driscoll's products and operations affect perceptions of inherent qualities and characteristics of an agricultural company like Driscoll's. FAC at Ex. L ("I will not buy your cancer produce again"; "@discollsberry = Poison ???"; "Horrendous farming practices").

Regarding injury, Defendants argue that comments by third-party actors who contributed to Driscoll's employee's fears and mental health effects—like commenters on their posts—fall beyond the scope of the Lanham Act. Id. at 9. But this oversimplifies Driscoll's alleged injuries. Lanham Act liability arises where a plaintiff shows "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Clorox, 398 F. Supp. 3d at 644–45. Plaintiffs can satisfy this test by alleging lost sales, diverted sales, or a "lessening of the goodwill associated with [plaintiff's] products." Factory Direct Wholesale, 411 F. Supp. 3d. at 923; see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 138 (2014) ("When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements."). Under this standard, Driscoll's have alleged an injury caused by Defendants' advertising. Driscoll's alleges that because of Defendants' posts, some consumers have "returned the products already purchased" and decided to "no longer purchase Driscoll's berries." FAC ¶ 65. That is enough to plead economic and reputational damages with sufficient particularity.

**d. False Advertising Liability as to Each Defendant**

Defendants also challenge the sufficiency of pleadings, arguing that Driscoll's fails to differentiate between Defendants and their roles contributing to specific statements or posts. Defs.' Mot. at 9–10. Under Rule 10, courts treat exhibits as part of the complaint and assume the contents are true for purposes of a motion to dismiss. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see Fed. R. Civ. Pro. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all



United States District Court
Northern District of California

United States District Court
Northern District of California

purposes.”). Driscoll’s Exhibit O, attached to the FAC, lists all 97 posts that are allegedly included in Defendants’ false advertising campaign. FAC ¶ 49, Ex. O. That list identifies the author and account for each post, effectively differentiating between Localize, Stoll, and Zoidis. Id. ¶ 49, Ex. O, at 1–7. This makes clear that all three parties are liable for all of the claims.

Driscoll’s has thus adequately alleged the elements of its Lanham Act claim. This Court DENIES the Defendants’ motion to dismiss the false advertising claim.

**2. Copyright Infringement under the Copyright Act, 17 U.S.C. § 501**

Defendants concede that Driscoll’s sufficiently alleges: (1) ownership of a valid copyright and (2) copying, thereby satisfying the elements needed to state a claim for copyright infringement. Feist Publ’ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see Defs.’ Mot. at 10. Defendants instead move to dismiss the copyright infringement claims by applying (a) the affirmative defense of fair use and (b) the statutory bar over damages and attorneys’ fees for infringement that predates copyright registration pursuant to Section 412. Defs.’ Mot. at 10–13.[2]

**a. Fair Use**

Section 107 of the Copyright Act provides that “purposes such as criticism, comment, [and] news reporting” are all fair use, not infringement, of copyrighted works. 17 U.S.C. § 107; see Monge v. Maya Mags., Inc., 688 F.3d 1164, 1170–71 (9th Cir. 2012). Congress identified four factors for courts to consider in assessing fair use on a case-by-case basis: (i) the purpose and character of the use; (ii) the nature of the copyrighted work; (iii) the amount and substantiality of the portion used in relation to the work as a whole; and (iv) the effect of the use on the potential market for the copyrighted work. See 17 U.S.C. § 107; Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 560–61 (1985); Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 529 (9th Cir. 2008). Though

---

[2] Defendants also argue again that Driscoll’s fail to differentiate between the Defendants and their respective roles in the alleged copyright infringement. Defs.’ Mot. at 13–14. But as discussed above, Driscoll’s sufficiently provides the relevant detail in Exhibit O to differentiate Localize, Stoll, and Zoidis. FAC ¶ 49, Ex. O. Thus, Defendants’ argument fails.

United States District Court
Northern District of California

fair use is a mixed question of law and fact, it may be decided on a motion to dismiss if there are no material facts in dispute. Leadsinger, 512 F.3d at 530. Driscoll's asserts there are several material facts in dispute, including the "purpose, necessity, character, and market effect of each use." Driscoll's Opp'n at 16.

**i. Purpose and Character**

The first fair use factor is most significant and asks whether the new use is "transformative," i.e. whether it adds new expression, meaning, or message to the original. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508, 528–29 (2023). Courts assess secondary works not only based on their novelty, but also on the nature of their use. Id. "Many secondary works add something new." Id. But when secondary works are commercial in nature, courts disfavor finding fair use even where new expression is added. Id. at 532–33.

The parties dispute the purpose of the use here. Localize copied eight photographs from Driscoll's website or social media accounts. FAC ¶¶ 48–53. Defendants argue that they incorporated the photos to "identify the subject of criticism" and "place commentary in context." Defs.' Mot. at 11. Driscoll's argues that Defendants used the photos commercially, i.e., to drive consumers away from Driscoll's towards Localize. Id. ¶ 71, 90–92. With material facts regarding transformative use in dispute, the first fair use factor cannot be determined as a matter of law on this record. Free Speech Sys., LLC v. Menzel, 390 F. Supp. 3d 1162, 1173–74 (N.D. Cal. 2019); Leadsinger, 512 F.3d at 530 ("[F]air use may be considered on a motion to dismiss . . . when no material facts are in dispute.").

**ii. Nature**

For the second factor, courts provide heightened protection to works that are both creative and unpublished. Harper & Row, 471 U.S. at 563–64. "Photos are generally viewed as creative" in nature. Monge, 688 F.3d at 1177. Where the originally copyrighted works are already published, the allegedly infringing works are more likely to qualify as fair use. Kelly v. Ariba Soft Corp., 336 F.3d 811, 820 (9th Cir. 2003). Here, Driscoll's previously published the original photographs on their website and social media accounts.

United States District Court
Northern District of California

FAC ¶¶ 48, 52. This factor weighs in Defendants' favor.

**iii. Substantiality**

For the third factor, courts examine the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." Harper & Row, 471 U.S. at 564. Driscoll's alleges that the Defendants used the photographs in full. FAC ¶ 92. "[C]opying an entire work militates against a finding of fair use." Kelly, 336 F.3d at 820–21. That said, wholesale copying does not preclude fair use per se, "[i]f the secondary user only copies as much as is necessary for his or her intended use." Id. at 820–21. The parties dispute whether it was necessary for Defendants to copy the entire image to allow users to recognize Driscoll's. As such, this factor cannot be determined at this stage.

**iv. Market Effect**

For the fourth factor, courts consider the "extent of market harm caused by the particular actions of the alleged infringer" and "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994) (citation omitted). Defendants argue that Driscoll's does not identify a licensing market for using corporate photographs. Defs.' Mot. at 12. Driscoll's identifies the "actual and potential licensing markets for editorial, social-media, promotional, and commercial uses of the photographs," although the extent of the impact remains unclear. Driscoll's Opp'n at 17. In sum, fair use cannot be resolved as a matter of law at the pleading stage, given the number of material facts in dispute. Thus, the Court DENIES the motion to dismiss.

**b. Statutory Damages Bar**

Section 412 of the Copyright Act bars statutory damages or attorneys' fees awards for infringement where the copyright owners registered the work after the date of infringement. See 17 U.S.C. § 412(1); Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696 (9th Cir. 2008). However, if the copyright owner registers a work within three months of its first publication, it qualifies for an exception to the Section 412 bar and

United States District Court
Northern District of California

damages are still available for infringement. See 17 U.S.C. § 412(2).

Driscoll's alleges that Defendants' infringement began on or about April 29, 2026. FAC ¶ 38. Driscoll's provides the date of first publication and date of registration for seven photographs. FAC ¶ 53, Ex. P. Photograph 4 is the only copyrighted work where the date of registration falls within three months of the work's first publication, and the statutory bar does not apply. See id. Otherwise, the statute bars an award of statutory damages or attorneys' fees for any alleged infringement of Photographs 1, 2, 3, 5, 6, or 7 before their respective registration dates. Even so, other forms of relief—such as actual damages and accounting of additional profits—remain available to the Plaintiff. 17 U.S.C. § 504.

The Court thus DENIES Defendants' motion to dismiss the copyright infringement claim, and now turns to Driscoll's motion for preliminary injunction.

### C. Preliminary Injunction

Driscoll's moved for a preliminary injunction to "prevent Defendants from further spreading the false and misleading statements and infringing Driscoll's copyrighted material" during this litigation. Prelim. Mot. at 2. Driscoll's requests the Court enjoin Defendants from (a) reproducing, distributing, or displaying Driscoll's copyrighted photographs; and (b) publishing or disseminating false and misleading statements that Driscoll's berries or operations cause cancer or were responsible for a pesticide drift event. Id. at i. Driscoll's also requests the Court to require Defendants to (c) delete or make unavailable all of the posts continuing copyrighted photographs or false statements; and (d) file a sworn compliance report. Id.

To obtain a preliminary injunction, Driscoll's must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20.

#### 1. Likelihood of Success on the Merits

To test likelihood of success on a false advertising claim, courts repeat the same

United States District Court
Northern District of California

five factor analysis from the motion to dismiss stage. See Southland Sod., 108 F.3d. at 1139. Defendants argue that Driscoll's does not meet the minimum "fair chance of success" required for preliminary injunction. Defs. Opp'n at 8–9. They then reiterate the same arguments from the motion to dismiss stage, namely, that "the challenged posts are not commercial advertising or promotion" and "the challenged statements are not literally or impliedly false statements of fact." Id. at 9–16. In line with the analysis about the arguments on motion to dismiss above, the Court concludes that Driscoll's is likely to satisfy all of the elements of its false advertising claims. See supra Part III.B.1. Thus, the Court finds that Driscoll's is likely to succeed on the merits.

To demonstrate likelihood of success on a copyright infringement claim, Driscoll's must show both ownership of a valid copyright and that the Defendants copied protected expression. Disney Enters. Inc. v. VidAngel, Inc., 869 F.3d 848, 856–57 (9th Cir. 2017). Defendants conceded that Driscoll's alleged both ownership and copying. See Defs.' Mot. at 10; supra Part III.B.2. Once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed. Disney Enters., 869 F.3d at 856. Defendants fail to do so. Supra Part III.B.2.a. Driscoll's thus meets its burden regarding the first factor for preliminary injunction.

**2. Likelihood of Irreparable Harm**

For false advertising claims, the Trademark Modernization Act of 2020 restored the rebuttable presumption of irreparable harm after finding of likelihood of success on the merits. InSinkErator, LLC v. Joneca Co., LLC, 163 F.4th 608, 622 (9th Cir. 2025). The burden then shifts to defendants for rebuttal. Id. Here, the Defendants argue that Driscoll's delay in seeking a preliminary injunction shows a lack of urgency sufficient to undermine irreparable harm. Prelim. Opp'n at 21–22. Courts, however, find that tardiness is not "particularly probative" for alleged injuries "enacted over a period of time and having a cumulative impact," given the ongoing, worsening nature of the offense. Arc of Cal. v. Douglas, 757 F.3d 975, 990–91 (9th Cir. 2014). So too here. Driscoll's filing

United States District Court
Northern District of California

delay is not particularly probative given the ongoing, worsening nature of the alleged injury. Driscoll's maintains that because the Defendants' posts remain publicly available online, they have the potential to accrue additional views, reposts, and shares daily. Prelim. Mot. at 27. As such, "the harm compounds daily." Id. Moreover, Defendants frequently post on an ongoing basis. Id.

Defendants also argue that Driscoll's evidence is "speculative," because the selected social media comments "do not constitute rigorous evidence of actual market harm." Prelim. Opp'n at 22. They argue that Driscoll's failed to submit evidence of consumer surveys, market research, or controlled studies showing actual diversion of sales. But such evidence is not required at the preliminary injunction stage. Courts have found evidence of consumer declarations and comments from distributors sufficient to show likelihood of irreparable harm. See Suzie's Brewery Company v. Anheuser-Busch Cos., LLC, 519 F. Supp. 3d 839 (D. Or. 2021) ("[E]ven without [the] rebuttable presumption, [p]laintiff's evidence of three consumer declarations [and] the declaration describing the comments from the distributor . . . are themselves sufficient to show a likelihood of irreparable harm."). Here, Driscoll's makes a sufficient showing through evidence of numerous consumer comments and declarations about changes in Driscoll's retail relationships. See FAC, Exs. O–I; Rose Decl. ¶¶ 5–7. Accordingly, Defendants fail to rebut the presumption of likelihood of irreparable harm.

For copyright claims, no presumption of irreparable harm applies. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 996, 998 (9th Cir. 2011). Courts have found irreparable harm where infringement threatens a plaintiff's goodwill or negotiating leverage with licensees. Disney Enters., 869 F.3d at 866. Here, Driscoll's has shown how infringement threatens their goodwill, through ample evidence of consumer impressions and reactions, identified through the number of views, likes, shares, and comments. FAC ¶ 64. This evidence is sufficient to establish likelihood of irreparable harm.

**3. Balance of Equities**

For both copyright and false advertising claims, before issuing a preliminary

injunction, courts must balance "competing claims of injury" and consider the effect on each party of granting or withholding the requested relief. Winter, 555 U.S. at 24. Driscoll's argues that without an injunction, it will continue to suffer irreparable injury to its brand, goodwill, consumer relationships, employee safety, and copyrights. Prelim. Mot. at 31. Defendants argue that an injunction would "effectively silence Defendants from participating in legitimate public discourse about pesticide use, agricultural practices, and community health." Prelim. Opp'n at 23. Driscoll's arguments take the day. Driscoll's does not seek injunctive relief to stifle the Defendants' ability to post online whatsoever. FAC at 32; see also J.K. Harris & Co., LLC v. Kassel, 253 F. Supp. 2d 1120, 1128 (N.D. Cal. 2003) (holding that broad injunctions against "defamatory, untrue, or misleading" statements are overbroad). Rather, Driscoll's injunction seeks to reach only the specific statements claimed to be in violation of the Lanham or Copyright Acts or potential future false or misleading posts that similarly mislead an audience to believe that Driscoll's caused childhood cancer or a "pesticide drift event." FAC ¶ 60, Ex. T. Once enjoined, Defendants can continue to advertise their own product or otherwise engage in commentary or criticism without infringing Driscoll's copyright or running afoul of false advertising laws.

Finally, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. Congress enacted the Lanham Act to "protect[] the consumer as well as the competitor from false and deceptive advertising." U–Haul Int'l, Inc. v. Jartran, Inc., 681 F.2d 1159, 1162 (9th Cir. 1982). An injunction limiting the availability of Defendants' false advertisements is in the public interest, in line with the goals of the Act. Id.

The Court concludes that Driscoll's has satisfied the requirement for preliminary injunctive relief. See Winter, 555 U.S. 7. As such, the Court GRANTS Driscoll's motion for preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES both of Defendants' pending motions

to dismiss and GRANTS Driscoll's motion for preliminary injunction. Accordingly, the Court:

1. PROHIBITS Defendants Zephyr Zoidis, Grant Stoll, and Localize, LLC from reproducing, distributing, or displaying Driscoll's Copyrighted Photographs;
2. PROHIBITS Defendants from publishing or disseminating false and misleading statements that Driscoll's berries or operations cause cancer or were responsible for the Watsonville, California pesticide drift event;
3. DIRECTS Defendants to delete or make unavailable all posts containing the Copyrighted photographs or false or misleading statements about Driscoll's identified in Driscoll's Exhibit O;
4. DIRECTS Defendants to file a sworn compliance report within 7 days to confirm that they removed or made unavailable the posts according to the Court's above direction; and
5. ORDERS Driscoll's to post a nominal bond of $5,000 within 24 hours. The bond shall be filed in the Clerk's Office and be deposited into the registry of the Court. If said bond is not posted by the aforementioned date and time, this Order shall be dissolved.

**IT IS SO ORDERED.**

Dated: November 18, 2026

CHARLES R. BREYER
United States District Judge